UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
JAMES ALFRED CROWDER and
SHIRLEY ANN CROWDER,

     Plaintiffs,

             Civil Action No. 08 CV 4803 (DLC)

   - against -

GENERAL ELECTRIC COMPANY, *et al.,*

     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


**PLAINTIFFS' MEMORANDUM OF LAW IN
<u>SUPPORT OF MOTION TO REMAND</u>**


         LEVY PHILLIPS & KONIGSBERG, LLP
         *Attorneys for Plaintiff*
         800 Third Avenue, 13th Floor
         New York, NY 10022
         (212) 605-6200

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    Captain Arnold P. Moore, USNR (RET.), P.E. . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    B.    Dr. Barry I. Castleman . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.    David Hobson . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    D.    Admiral Ben J. Lehman, US Navy (RET.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I.    GE Cannot Establish a "Causal Connection" Between Its Failure to Provide Asbestos Warnings and Any Naval Order or Specification. . . . . . . . . . . . . . . . 9

    II.    GE Has Not Raised a "Colorable" Federal Defense to Plaintiffs' State Law Failure to Warn Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    III.    The Interests of Justice Support Prompt Remand To State Court. . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TABLE OF AUTHORITIES

Boyle v. United Technologies Corp., 478 U.S. 500, 108 S.Ct. 2510 (1988) . . . . . . . . . . 1, 15, 16

Chicano v. General Electric Company, et al., 2004 WL 2250990 (E.D.Pa. 2004) . . . . . . . . . . . . . . . 11

Desenberger v. United Technologies Corp., 297 F.3d 66, 75 (2nd Cir. 2002) . . . . . . . . . . . . . . 15

Estate of Radcliffe v. Pradera Realty Co., 2008 WL 53115 (S.D.N.Y. 2008) . . . . . . . . . . . . . . . . . . . 14

Faulk v. Owens-Corning Fiberglass Corp., 48 F.Supp. 2d 653, 663 (E.D.Tex. 1999) . . 12, 17, 19

Feidt v. Owens Corning Fiberglas, Inc. et al., Civil Action No. 96-4349
        (Jan. 6, 1997, D. NJ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

Fortier v. Ampco-Pittsburgh Corp. et al., 3:07-cv-00005 (D.Conn. 2007) . . . . . . . . . . . . . . . 12

Freiberg v. Swinterton & Walberg Property Services, Inc. et al.,
        245 F.Supp.2d 1144, 1155 (D.Colo. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Gitto v. A.W. Chesterton Co., Inc. et al., 07 Civ. 04771 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Green v. A.W. Chesterton Company, et al., 366 F.Supp.2d 149, 157 (D.Me. 2005) . . . . . . . . . 14

Grispo v. Eagle-Pitcher Industries, Inc., 897 F.2d 626, 630-631 (1990) . . . . . . . . . . . . . . . . . . 15

Hilbert v. Aeroquip, Inc. et al., 2007 WL 1186041, *8 (April 12, 2007, D. Mass) . . . . . . . . . . 14

Hilbert v. McDonnell Douglas Corp., 529 F.Supp.2d 187, 203 (D.Mass. 2008) . . . 11, 14, 17, 19

In re Agent Orange Product Liability Litigation, 304 F.Supp.2d 404, 436, 441-42
        (E.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Agent Orange Product Liability Litigation, 517 F.3d 76, 87 n.9 (2nd Cir. 2008) . . . . . . . . . 19

In Re Joint Eastern and Southern District Asbestos Litigation, 715 F.Supp.
        1167, 1169 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Maine Asbestos Cases, 44 F.Supp.2d 368, 374 (D.Me. 1999) . . . . . . . . . . . . . . . . . . . . 3, 20

In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability Litigation v.
        Atlantic Richfield Company, 488 F.3d 112, 124 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 9

Isaacson v. Dow Chemical Co., 517 F.3d 129 (2nd Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . 19

Leslie v. Banctec Serv. Corp., 928 F.Supp. 341, 347 (S.D.N.Y.1996) . . . . . . . . . . . . . . . . . . . 9

Mesa v. California, 489 U.S. 121, 109 S.Ct. 959 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Nesbiet v. General Electric Co., 399 F.Supp.2d 205 (S.D.N.Y. 2005) . . . . . . . . . . 10, 13, 17, 18

Nguyen v. Allied Signal, Inc., 1998 U.S. Dist. LEXIS 15517, *4 (N.D.Cal. 1998) . . . . . . . . . 12

Overly v. Raybestos-Manhattan, 1996 U.S. Dist. LEXIS 13535, *11-12 (N.D. Cal. 1996) . . . . 19

Pan Atlantic Group, Inc. v. Republic Ins. Co., 878 F.Supp. 630, 638 (S.D.N.Y.1995) . . . . . . . . 9

Polesky v. A.C. & S., Inc., 1998 WL 633666 *2 (S.D.N.Y.)(DLC) . . . . . . . . . . . . . . . . . . . . . . 9

Ronsini v. Garlock, Inc., 256 A.D. 250, 251, 683 N.Y.S.2d 39, 40 (1998) . . . . . . . . . . . . . . . 16

Ryan v. Dow Chem. Co., 781 F.Supp. 934, 946 (E.D.N.Y. 1992) . . . . . . . . . . . . . . . . . . . . . . . 10

Sales v. Weyerhaeuser Co., 138 Wash.App.222, 233 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Sether v. Agco Corp., 2008 WL1701172, *3 (S.D.Ill. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 11, 13

Snowdon v. A.W. Chesterton Co., 366 F.Supp. 2d 157, 165 (D. Me. 2005) . . . . . . . . . . . . . . . 14

United States v. Garcia, 291 F.3d. 127, 140 (2nd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Vanouwerker v. Owens-Corning Fiberglass Corp., 1999 WL 335960, *7
        (E.D.Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Weese v. Union Carbide Corporation, 2007 WL 2908014, *6 (S.D.Ill. 2007) . . . . . . . . 10, 11, 19

Weitzman v. Eagle-Pitcher Industries, 144 Misc.2d 42, 45, 542 N.Y.S.2d 118 (1989) . . . . . . . 16

Westmiller v. IMO Industries, Inc., 2005 WL 2850334, *1 *2 (W.D.Wash) . . . . . . . . . . 10, 14, 18, 19

Statutes and Regulations

14A Charles Allen Wright, et al., *Federal Practice and Procedure* § 3739 (2d ed. 1985 &
Supp.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

28 U.S.C. § 1442(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 11, 19

<u>Publications</u>

*Asbestos: Medical and Legal Aspects* (5th Edition, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## INTRODUCTION

Plaintiffs James Ann Crowder and Shirley Ann Crowder filed this asbestos lawsuit on April 23, 2008, in the New York City Asbestos Litigation ("NYCAL"). (Notice of Removal, Ex. A). Mr. Crowder is dying at the age of 66 as the result of mesothelioma, a fatal cancer caused by asbestos exposure. (Notice of Removal, Ex. B).

Mr. Crowder was exposed to asbestos while serving aboard the U.S.S. Franklin Delano Roosevelt ("FDR") from 1958 through 1962. (Notice of Removal, Ex. B, Chart A). Defendant General Electric ("GE") manufactured and supplied the marine steam turbines that were used on the FDR. (Notice of Removal, ¶ 6). GE's marine turbines had asbestos-containing components and utilized asbestos insulation. Plaintiffs' sole claim against GE is that the company failed to warn Mr. Crowder and his fellow servicemen about the hazards of asbestos.[1]

Defendant General Electric ("GE") removed this case on May 22, 2008 on alleged federal officer removal grounds. This case should be remanded because: (1) GE has not satisfied its burden of establishing the "causal connection" element required by the federal officer removal statute, 28 U.S.C. § 1442(a)(1), i.e. that a federal officer caused GE's failure to warn; and (2) GE has not demonstrated that is has even a colorable claim to its sole alleged federal defense – the government contractor defense pursuant to Boyle v. United Technologies Corp., 478 U.S. 500, 108 S.Ct. 2510 (1988).

Indeed, there is a complete absence of admissible proof to substantiate GE's claim that,

---

[1] Plaintiffs concede that their sole claim arising from Mr. Crowder's Naval asbestos exposures is based solely on a state law failure to warn theory. Plaintiffs are not pursuing any claim of design defect or manufacturing defect.

1

during the relevant time period of Mr. Crowder's exposure, the Navy prohibited or interfered with GE's efforts to warn Navy servicemen about the hazards of asbestos.    The following facts are undisputed and compel remand:

- There is no evidence that GE <u>ever</u> made any effort to warn Navy servicemen, such as Mr. Crowder, about the hazards of asbestos associated with its equipment (e.g., turbines) that contained and utilized asbestos.

- In both the Navy <u>and</u> commercial setting GE sold the same equipment (e.g., turbines) that contained and utilized asbestos.  GE made the same decision to not issue warnings in both the Navy <u>and</u> commercial setting.

- There is no evidence that the Navy had any involvement in the decision by GE (or any other company) to not issue asbestos warnings.

- The relevant Navy specifications for the time period of Mr. Crowder's service required equipment manufacturers to issue warnings in "technical manuals" about hazards associated with the use of their equipment, with no mention or exemption for asbestos-related hazards.

Unable to offer a single document or specific testimony reflecting any effort that GE made to warn Navy servicemen about asbestos or reflecting any involvement by the Navy with GE's decision not warn, GE offers conclusory and generalized statements from two former employees, David Hobson and Ben J. Lehman.

Neither Mr. Hobson nor Mr. Lehman point to any direct order or document prohibiting asbestos warnings.  Neither claims to have personal knowledge of any specific instance in which the Navy prohibited GE (or any product manufacturer) from warning about any product hazard, much less one as deadly as asbestos.  Moreover, while basing their opinions solely on personal experience (rather than historical documentation), neither witness had any involvement with the Navy or GE during the relevant time period of Mr. Crowder's exposure.

Of course, if GE's claim that the Navy prohibited product manufacturers from warning about

asbestos were true, proof of such a prohibition could certainly be found in the Navy archives in the form of a military specification, a memorandum or even a letter. But there was never any such prohibition, and therefore GE offers no proof – only unsubstantiated assertions – in support of removal.

Mr. Crowder is a very sick man. He will not survive much longer, and therefore his case has been assigned to an expedited trial setting in the NYCAL, designed to afford living mesothelioma victims their day in Court. If this case is not promptly remanded, it will be transferred to the federal asbestos MDL ("MDL-875"), and will encounter significant delay. In re Maine Asbestos Cases, 44 F.Supp.2d 368 (D.Me. 1999) ("If these claims return to state court, they will proceed to resolution. If they remain in federal court, they will encounter significant delay upon their transfer through the Panel on Multidistrict Litigation to the Eastern District of Pennsylvania").

Based on the evidence marshaled below, Plaintiffs respectfully request that the Court remand this case to state court and grant Plaintiffs all other relief deemed just and proper.

## FACTS

A.    **Captain Arnold P. Moore, USNR (RET.), P.E.**

As set forth in the Declaration of Captain Arnold P. Moore, USNR (RET.), P.E. ("Mr. Moore"), the Navy, at no time, prohibited warnings with regard to hazardous materials such as asbestos. In fact, the applicable Navy specifications required GE to provide safety warnings to individuals, such as Mr. Crowder, with no exception made for asbestos.[2]

---

[2]Plaintiffs do not bear any burden of showing that GE was required by federal military specifications to provide asbestos warnings. Such evidence is offered here solely to demonstrate that GE's claim that it was prohibited from providing asbestos warnings is untrue and lacking in foundation. Plaintiffs' failure to warn claims are based solely on state law.

3

In his Declaration, Mr. Moore attests that, based on his 26 years of experience as a Naval Officer and 27 years of experience as a Naval Architect and Marine Engineer as well as his extensive review of Navy specifications and standards from the 1950s and 1960s, Naval specifications and standards "required equipment manufacturers and other vendors providing equipment to the Navy to provide warnings concerning hazards associated with their products", and the "hazards associated with exposure to asbestos and asbestos containing materials and equipment were not exempted from these requirements." [Exhibit A[3], Declaration of Arnold P. Moore, and Exhibits 1 through 15 attached thereto, at ¶ 11.]

During the relevant time period, the plain language of the applicable MIL-15071 series of military specifications consistently <u>required</u> manufacturers of equipment to provide warnings in technical manuals regarding hazards associated with the use of their products.  [Ex. A ¶¶ 13-17, and Exhibits 4 through 8 attached thereto.].  None of these military specifications make any exception for asbestos-related hazards or even mention the word asbestos. [<u>Id.</u>].

The Navy required equipment manufacturers to supply these technical manuals to the locations where equipment was shipped to insure that workers would have the necessary information. [<u>Id.</u>].  In fact, applicable military specifications required that equipment manufacturers supply two copies of the technical manual with each unit of equipment and that such manuals be distributed throughout the Navy, including two copies to each Naval Shipyard.  [<u>Id.</u>].  The Navy encouraged personnel to read the equipment safety manuals to protect themselves.  [<u>Id.</u>, ¶ 22].

During the time period of Mr. Crowder's service, the Navy expressly declared its intent to

---

[3]Plaintiffs Exhibits are attached to the Declaration of Jerome H. Block, filed simultaneously herewith.

"accept <u>the manufacturer's commercial type of manual or one prepared in accordance with his</u> <u>commercial practice</u> whenever it is roughly equivalent to the detail requirements included [in the MIL-15071 specifications]." [<u>Id.</u>, ¶ 16] (emphasis added).  As Mr. Moore points out, this statement reflects the United States Government's express intention to "accept commercial practices which are governed by state law." [<u>Id.</u>].

GE's witnesses, Hobson and Lehman, speculate that the Navy would have prohibited equipment manufacturers from warning about asbestos (if they had attempted to do so) and/or forced such manufacturers to remove any asbestos warnings from technical manuals in the review and approval process.  However, as Mr. Moore states:

> My Exhibits 2 through 8 are the military specifications for preparing equipment technical manuals from 1936 until 1962. Nowhere in any of these specifications does the Navy either direct the use of a specific warning or caution or prohibit the use of any specific warning or caution.  Instead the Navy places the requirement upon equipment vendors to identify hazards and safety precautions required for their equipment and to provide appropriate warnings and cautions for this equipment.... There are no regulations or documentation that I have reviewed or that have been presented by Lehman or Hobson that would suggest that the Navy would have prevented any equipment manufacturer from warning about asbestos hazards.

[<u>Id.</u>, ¶ 26].

Not only do Lehman and Hobson fail to cite to any military specifications that would call for the removal of asbestos warnings from technical manuals submitted by equipment manufacturers, but they fail to identify a specific instance in which a manufacturer was ever required to remove <u>any</u> safety warning (asbestos or otherwise) from a technical manual that was submitted to the Navy for review and approval.  [<u>Id.</u>, ¶ 28 ("I attest that based on my own extensive interface with Navy officials and employees involved in the review and approval of technical manuals, drawings and other documents, I have never been asked to remove a hazard or safety warning or caution.  Nor have

5

Lehman or Hobson attested that they were ever asked to do so.").]

      B.    <u>Dr. Barry I. Castleman</u>

      Plaintiffs have submitted the Declaration of Dr. Barry I. Castleman, an expert on the history of the hazards of asbestos and corporate conduct relating to the same. [<u>See</u> Exhibit B, Declaration of Barry I. Castleman].

      Dr. Castleman's doctoral thesis was, Asbestos: An Historical Case Study of Corporate Response to an Industrial Health Hazard, and is largely identical to a book published in 1984 by Prentice Hall Law and Business called *Asbestos: Medical and Legal Aspects* (now in its 5th Edition, 2005). [Ex. B, ¶ 4]. Dr. Castleman has researched GE's corporate knowledge and conduct relating to the hazards of asbestos, devoting a section of his book on the subject. [<u>Id.</u>, ¶ 7, and exhibit A attached thereto].

      GE officials were aware of the hazards of asbestos, including causation of the disease asbestosis, by 1930. [<u>Id.</u>, ¶ 7]. Throughout the 1930s, GE was involved in monitoring the levels of asbestos in its plants and using X-rays to assess the effects of asbestos on its workforce. [<u>Id.</u>]. In the 1930s and 1940s, in recognition of the dangers posed by asbestos, GE used an exhaust system to keep asbestos dust levels down, distributed booklets, provided coveralls, underwear, caps and gloves to its plant workers.[4] [<u>Id.</u>].

      In Dr. Castleman's extensive research of GE's corporate documents and testimony and minutes of trade association meetings in which officials of GE attended, he has never seen any

---

[4]While GE took steps to protects its own workers from the hazards of asbestos, it did not provide warnings to non-employee, end users of its equipment that contained and utilized asbestos. [<u>Id.</u>, ¶ 8]. These end users included both commercial workers (e.g., merchant marine and powerhouse workers) and government personnel (e.g., Navy workers and federal shipyard workers). [<u>Id.</u>].

document discussing the Navy prohibiting GE from warning about the hazards of asbestos, or interfering with GE's decision regarding whether to warn about the hazards of asbestos.  [Id., ¶ 9].  Significantly, GE made the same decision with regard to <u>both commercial and Navy/shipyard personnel</u> who used GE's equipment which contained and utilized asbestos, which was to not provide any warning about asbestos.  [Id., ¶ 9].

Dr. Castleman has never seen any document that discusses or suggests that the Navy prohibited any manufacturer or seller from warning about asbestos or that the Navy interfered, in any way, with a company's decision regarding whether to issue such warnings.  [Id., ¶ 10].[5]

**C.     David Hobson**

_____Mr. Hobson was employed by GE from 1969 through 1996.  (Notice of Removal, Ex. C).  Mr. Hobson admits that he has no personal knowledge regarding the historical practices of GE relating to the Navy prior to 1969, (Exhibit C, Excerpts of Deposition of David Hobson, at 124), and that nothing in his education, training or experience would provide him such knowledge prior to 1965.  (Id., at 83-84).   Unlike Mr. Moore, Mr. Hobson does not reference or attach a single Navy specification in support of his affidavit.  In fact, Mr. Hobson admits that he has not reviewed the military specifications governing technical manuals for the relevant time period of Mr. Crowder's Navy service in this case.  (Id., at 280).

---

[5]Once companies began to issue asbestos warnings to product users, there is no evidence that the Navy required the removal or alteration of such warnings for products sold to the Navy.  In 1964, Johns-Manville ("J-M") was among the first companies to provide warnings with its asbestos-containing products, namely its asbestos insulation. [Ex. B, ¶ 11].  During and after this time frame, J-M sold asbestos insulation to the United States Navy. [Id., ¶ 11].  In Dr. Castleman's extensive review of J-M documents, which has included visits to the J-M archives in Denver, Colorado, he has never seen any evidence that J-M removed or altered the warning labels that appeared on its asbestos insulation for sales to the Navy. [Id.].  Nor is there evidence that the Navy ever requested that J-M or any other company do so.  [Id.].

The actual military specifications in effect during the time of Mr. Crowder's exposures (1958 to 1962) directly contradict Mr. Hobson's speculative statements regarding asbestos warnings. As Mr. Moore states:

> In paragraph 5 of his affidavit, Hobson (referring to equipment technical manuals) states, again without documentation, that: 'These manuals included safety or hazard information only to the extent directed by the Navy.' This is a completely erroneous statement. Beginning in 1936 and continuing to the present day the U.S. Navy has <u>required</u> that <u>machinery manufacturers</u> such as GE identify and provide safety precautions and warnings for hazards associated with their products. Paragraphs 12 through 17 of this declaration trace the Navy specifications that required these safety precautions and warnings from their inception in 1936 through the time of Mr. Crowder's separation from the Navy in 1962.

[Ex. A, ¶ 24] (emphasis in original).

### D.    Admiral Ben J. Lehman, US. Navy (RET.)

Mr. Lehman served as a ship superintendent at the Brooklyn Navy Yard from 1942 to1944 and the San Francisco Naval Shipyard from 1950 to 1952. However, when Mr. Crowder began his service in 1958, Mr. Lehman was no longer employed in the Naval industry, but rather was an Engineering Manager for Lockheed Missiles and Space Co. (Exhibit D, CV of Ben J. Lehman). Significantly, Mr. Lehman admits that he is "not aware that the Navy <u>ever</u> refused to permit a safety warning" that a manufacturer suggested be published in a manual. (Exhibit E, Excerpts of Deposition of Ben J. Lehman, dated March 21, 2005, at 33-34) (emphasis added). Mr. Lehman admits that he never had any responsibility with respect to whether or not the Navy would permit warnings; he never spoke to anyone about the subject during his active duty; he has never read anything as whether or not the Navy would have allowed asbestos warnings; and he doesn't know whether an equipment manufacturer, such as GE, ever even suggested putting an asbestos warning either on the outside of the turbine or in a manual. (Ex. E, at 77-78, 125). Mr. Lehman further

admits that he has never researched the question as to whether or not the Navy would allow any equipment manufacturer such as GE to provide a warning with respect to the hazards of asbestos, and he does <u>not</u> claim to know what the Navy "would and would not allow" prior to 1972 when he became employed by Litton Industries.  (Ex. E, at 28, 126).

## LEGAL STANDARD

This Court, in a case removed pursuant to the federal officer removal statute, has previously stated:  "'Generally speaking, removal statutes are to be 'strictly construed against removal and all doubts should be resolved in favor of remand.'"  <u>Polesky v. A.C. & S., Inc.</u>, 1998 WL 633666 *2 (S.D.N.Y.)(DLC) (quoting <u>Leslie v. Banctec Serv. Corp., 928 F.Supp. 341, 347 (S.D.N.Y.1996)</u> (citations omitted)).  This Court has further recognized the fundamental precept that "the burden of proving federal removal jurisdiction is on the party seeking to preserve removal, not the party moving for remand."  <u>Polesky</u>, 1998 WL 633666 at *2 (quoting <u>Pan Atlantic Group, Inc. v. Republic Ins. Co.,</u> 878 F.Supp. 630, 638 (S.D.N.Y.1995); 14A Charles Allen Wright, et al., *Federal Practice and Procedure* § 3739 (2d ed. 1985 & Supp.1997).

## ARGUMENT

### I.    GE Cannot Establish a "Causal Connection" Between Its Failure to Provide Asbestos Warnings and Any Naval Order or Specification.

A corporation, such as GE, that removes a case under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), must establish, <u>inter alia</u>, "that it was 'acting under' a federal officer, which subsumes the existence of a 'causal connection' between the charged conduct [here, failure to warn] and asserted official authority."  <u>In re Methyl Tertiary Butyl Ether ("MTBE") Products Liability</u>

9

Litigation v. Atlantic Richfield Company, 488 F.3d 112, 124 (2d Cir. 2007)(reversing district court's decision permitting federal officer removal, and concluding that defendants failed to demonstrate that the federal government compelled them to use MTBE in gasoline; or that federal regulatory scheme made it "impossible for them to use other less, polluting additives"). In other words, the defendant corporation must prove that "'the acts that form the basis for the state civil or criminal suit [i.e. failure to warn] were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations.'" Id. (quoting Ryan v. Dow Chem. Co., 781 F.Supp. 934, 946 (E.D.N.Y. 1992)).

In the context of an asbestos lawsuit based on a failure to warn claim, the defendant must show either that asbestos warnings were prohibited by the Navy or that the Navy directly interfered with the defendant's ability to fulfill its state law obligation to warn. Weese v. Union Carbide Corporation, 2007 WL 2908014, *6 (S.D.Ill. 2007) ("defendant must show that the government prevented it from issuing adequate warnings regarding exposure to asbestos"); Nesbiet v. General Electric Co., 399 F.Supp.2d 205 (S.D.N.Y. 2005) ("defendant must establish that the government's control over warnings directly interfered with the defendant's ability to fulfill its state law obligation to warn"); Westmiller v. IMO Industries, Inc., 2005 WL 2850334, *2 (W.D.Wash)("requires a showing by defendant that the government specifically prohibited it from placing warnings on its products"); Freiberg v. Swinterton & Walberg Property Services, Inc. et al., 245 F.Supp.2d 1144, 1155 (D.Colo. 2002) (defendants "must establish [that the government's] direction and control of their activities directly interfered with their ability to fulfill their state law obligation to warn"). Moreover, if the defendants could have "simultaneously complied with the [Navy] contractual obligations and the state law duty to warn", then "the plaintiff's harms were not caused by the

10

defendants' contractual responsibilities." Hilbert v. McDonnell Douglas Corp., 529 F.Supp.2d 187 (D.Mass. 2008) (emphasis added).

The factual record presented to this Court is one-sided. GE fails to present a scintilla of evidence of any order or regulation that prohibited asbestos warnings or interfered with GE's ability to issue such warnings. See, supra, FACTS §§A-D. Plaintiffs, on the other hand, present substantial proof that no such order or regulation was ever in existence. Id. Plaintiffs also present substantial proof that the applicable Navy specification not only did not prohibit asbestos warnings but generally required equipment manufacturers to warn about safety hazards, with no exemption of asbestos. Id., §A. To further underscore the fact that GE made its own decision to not issue asbestos warnings (and that the Navy did not make this decision for GE or cause GE to make this decision), the Plaintiffs further presented proof that GE made the same decision to not issue asbestos warnings in both the Navy and commercial setting.[6] Id., §B.

GE has not – and cannot – demonstrate that the Navy prohibited or directly interfered with GE's state law obligation to warn. Therefore, the "causal connection" required by 28 U.S.C. §1442(a)(1) has not been established and this case must be remanded. Accord, Hilbert, 529 F.Supp.2d at 203 (case remanded; "defendants failed to show causal nexus between their contractual obligations and the plaintiffs' alleged injury"); Weese, 2007 WL 2908014 at *6 (case remanded; defendant "adduced no evidence that a federal officer prevented it from furnishing adequate

_____

[6] It was not as if GE took responsibility for warning in the commercial setting but was precluded from doing so in the Navy setting. It was not as if GE recognized its legal duty to warn and ever attempted to satisfy it. Indeed, GE continues to argue that it had no duty to warn about the hazards associated with the use of asbestos materials on its turbines. GE has lost this "no-duty" argument repeatedly. See, e.g., Sether v. Agco Corp., 2008 WL1701172, *3 (S.D.Ill. 2008); Chicano v. General Electric Company, et al., 2004 WL 2250990 (E.D.Pa. 2004).

warnings about the dangers of exposure to asbestos"); <u>Fortier v. Ampco-Pittsburgh Corp. et al.</u>, 3:07-cv-00005 (D.Conn. 2007) (Exhibit F)(case remanded; "Defendants... were free to include warning not dictated by the Navy"); <u>Faulk v. Owens-Corning Fiberglass Corp.</u>, 48 F.Supp. 2d 653, 663 (E.D.Tex. 1999) (case remanded; "The federal officer remained completely silent as whether to <u>warn</u> about the use of asbestos; this silence is fatal to the 'causal nexus' necessary for the second prong") (emphasis in original); <u>Vanouwerker v. Owens-Corning Fiberglass Corp.</u>, 1999 WL 335960, *7 (E.D.Tex. 1999) (case remanded; "the federal government provided no direction or control on warnings when using asbestos"); <u>Nguyen v. Allied Signal, Inc.</u>, 1998 U.S. Dist. LEXIS 15517, *4 (N.D.Cal. 1998)(case remanded; defendants did "not show federal direction of their activities with regard to warnings attached to asbestos products").

Courts have remanded cases which similarly allege exposure to asbestos from turbines on Navy ships. For example, in <u>Feidt v. Owens Corning Fiberglas, Inc., et al.</u>, Civil Action No. 96-4349 (Jan. 6, 1997, D. NJ) (Exhibit G), the Court ordered remand, concluding that: "Nothing in the specifications or other directions of the Department of the Navy or its officers precluded Westinghouse from affixing to its turbines, or otherwise supplying to those who would come into contact with them, adequate warnings of the potential dangers of asbestos." <u>Id.</u>, at 3. The Court accurately found that Westinghouse (like GE) was "free to provide warnings regarding the use of its turbines when employed with the specified thermal insulation, without running afoul of any provision of its government contract to manufacture and supply those turbines." <u>Id.</u> The Court, therefore, held that Westinghouse "failed to meet its burden of establishing the <u>causal connection</u>

required by... §1442(a)(1)."[7]  Id. (emphasis added); see also, Sether v. Agco Corp., 2008 WL1701172, *3 (S.D.Ill. 2008) (case involving GE Navy turbines remanded; "The Court... finds as wanting the evidentiary support GE has submitted in support of it claim of federal officer jurisdiction. specifically, the affidavits of David Hobson and Ben J. Lehman).

Further, although the Court in Nesbiet v. General Electric Co., 399 F.Supp.2d 205 (S.D.N.Y. 2005), denied plaintiffs' motion to remand, that case is easily distinguishable from this one. Indeed, it is quite clear that the Court in Nesbiet, would have ordered remand if the factual record had been as it is here.[8]  Most significantly, the plaintiff ("Mr. Nesbiet") was exposed to asbestos at the Brooklyn Navy Yard from 1943 to 1944 (i.e. during the same time that Mr. Lehman served at this shipyard). Id., at 205, 208. Because of this fact, and this fact alone, the Court concluded that Mr. Lehman was "competent" to make the statements in his affidavit, "by virtue of the position he occupied at the Brooklyn Navy Yard during the relevant time period." Id., at 208 (emphasis added). That the Court would not have considered as admissible evidence Mr. Lehman's affidavit for a different time period is demonstrated by the fact that the Court, in fact, declined to consider the testimony of Mr. Hobson because it was based solely on Mr. Hobson's personal experience which post-dated the relevant time period of Mr. Nesbiet's work at the Brooklyn Navy Yard. Id., at 207.

---

[7]The Court distinguished the Feidt case from those involving Agent Orange in which the government expressly prohibited all labeling information including warnings. Id.

[8]The Plaintiffs in Nesbiet did not submit any expert declaration in support of their motion to remand. The Plaintiffs here have submitted two, from Mr. Moore and Dr. Castleman, respectively. (Ex. A-B). In addition, because of the different time period involved in Nesbiet (1943-1944) and this case (1958-1962), Plaintiffs here have submitted many different military specifications. The military specifications applicable to this case strongly show that equipment manufacturers were required to provide safety warnings, with no exemption for asbestos. For example, the 1961 military specification (Ex A, ¶ 16, and Ex. 7 attached thereto) expressly declared the Navy's intent to generally accept manuals from manufacturers in accordance with the manufacturer's commercial practices. Id.

According to this same standard, any statements by either Lehman or Hobson suggesting that "during the relevant time period [which in this case is 1958-1962] the Navy prohibited warnings concerning the dangers of asbestos.... are without foundation – and therefore inadmissible - as beyond the scope of [their] personal knowledge and experience". Id. Accordingly, there is no admissible evidence in this case to justify removal on federal officer grounds - not a single document, or a single statement made by a witness based upon personal knowledge during the relevant time period.[9]

GE's failure to establish the requisite "causal connection" element for federal officer removal, in and of itself, mandates that this case be remanded.

---

[9]Even if Mr. Lehman or Mr. Hobson did have personal knowledge regarding the relevant time period in this case – and they do not – the conclusory statements in their affidavits suggesting that the Navy prohibited GE from warning about asbestos would still be inadmissible because neither witness has identified any specific document or specific instances (e.g., a specific meeting or discussion) that form the "objective bases" of their opinions. See United States v. Garcia, 291 F.3d 127, 140 (2nd Cir. 2002) ("When a witness has not identified the objective bases for his opinion, the proffered opinion obviously fails completely to meet the requirements of [Federal] Rule [of Evidence] 701.. because there is no way for the court to assess whether it is rationally based on the witness's perceptions."). To the extent that Mr. Lehman or Mr. Hobson could be deemed to be giving expert opinions, their statements would also be inadmissible because they have not identified "sufficient facts or data" – indeed, neither has identified a single document or specific event – to support their opinions. Fed. R. Evid. 702. Rather, their opinions are "speculative and not supported by a sufficient evidentiary foundation". Estate of Radcliffe v. Pradera Realty Co., 2008 WL 53115 (S.D.N.Y. 2008) (excluding expert opinion from consideration on summary judgment). Accord, See Hilbert v. Aeroquip, Inc. et al., 2007 WL 1186041, *8 (April 12, 2007, D.Mass) (affidavit insufficient to support removal; "The conclusion that Mr. DeBois' affidavit is not based on his personal knowledge is further supported by the absence of exemplar contracts or regulations which could confirm his otherwise conclusory allegations"); recommendation adopted, 486 F.Supp.2d 135 (D. Mass. 2007); Snowdon v. A.W. Chesterton Co., 366 F.Supp. 2d 157, 165 (D. Me. 2005) (affidavit submitted by removing defendant "which simply describes the content of the regulations and specifications is, in the absence of the documents themselves, nothing more than hearsay and is not entitled to any weight"); Westmiller v. IMO Industries, Inc., 2005 WL 2850334, *1 (W.D.Wash)(striking statements in affidavit; "Absent the actual specifications, [the witnesses'] conclusory statements about what the specifications would have stated amount to mere speculation and are not admissible"); Green v. A.W. Chesterton Company, et al., 366 F.Supp.2d 149, 157 (D.Me. 2005).

14

**II.    GE Has Not Raised a "Colorable" Federal Defense to Plaintiffs' State Law Failure to Warn Claim.**

The government contractor defense was first articulated in a state law design defect case, Boyle v. United Technologies Corp., 478 U.S. 500, 108 S.Ct. 2510 (1988). The defense has been applied to failure to warn cases, but only in very limited circumstances. In Desenberger v. United Technologies Corp., 297 F.3d 66, 75 (2nd Cir. 2002), the Court explained these limitations as follows:

> "The affirmative defense applies only if the government exercised significant control over the relevant actions of the contractor. In failure to warn cases, this means that the ultimate product users cannot sue the contractor for failure to warn if the government controlled which warnings the contractor was allowed to provide to those users and thereby precluded the warnings at issue from being given."

Id., at 75 (emphasis omitted) (citing Grispo v. Eagle-Pitcher Industries, Inc., 897 F.2d 626, 630-631 (1990));

The Court in Grispo denied the manufacturing defendant's motion for summary judgment based upon the government contractor defense in the context of an asbestos case arising from the sale of asbestos-containing products to the Navy. The Court stated that the defendant (Eagle-Picher) "must show that the applicable federal contract includes warning requirements that significantly conflict with those that might be imposed by state law." 897 F.2d at 630. The Court held that no "significant conflict" exists that would justify application of the government contractor defense "where a defendant can comply both with the federal specifications and with the standards of conduct imposed by the state." Grispo, 897 F.2d at 630-631.

In further limiting the application of Boyle in the context of a failure to warn case, the Court stated that the defendant "must show that whatever warnings accompanied a product resulted from

15

a determination of a government official... and thus that the government itself 'dictated' the content of the warnings meant to accompany the product." Id., at 632 (emphasis added) ("Stripped to its essentials, the military contractor's defense under Boyle is to claim, "The Government made me do it.").

Importantly, the Court also held that, by requiring a "very minimal floor" of information to be submitted with the product, the Navy cannot be said to have created a "ceiling" or to have placed a "limit upon any additional information a manufacturer have wished to convey to those using the product." Id., at 633; see also, In Re Joint Eastern and Southern District Asbestos Litigation, 715 F.Supp. 1167, 1169 (1988) ("because the federal specifications were silent on the matter of warnings, defendant could have provided adequate warnings to plaintiffs and complied with the federal specifications").

State courts in New York have interpreted the government contractor defense in the same manner, rejecting its application in asbestos cases premised on failure to warn. Ronsini v. Garlock, Inc., 256 A.D. 250, 251, 683 N.Y.S.2d 39, 40 (1998) (trial court properly declined to charge jury on government contractor defense "[i]n the absence of evidence of a conflict between State warning requirements and any Federal prescription of label information or proscription of a warning"); Weitzman v. Eagle-Pitcher Industries, 144 Misc.2d 42, 45, 542 N.Y.S.2d 118 (1989) ("Since Eagle-Picher as a manufacturer could have complied with both the military specifications and also placed adequate warnings on its packages without in any way frustrating any identifiable Federal interest, there was no significant conflict. In fact there was total silence on the subject of warnings.").

In light of the complete failure of GE to offer any proof that the Navy precluded or interfered with the effort of GE (or any other company) to provide asbestos warnings, and in light of the proofs

offered by Plaintiffs that unequivocally establish that there was no such prohibition or interference

(and indeed that the Navy required equipment manufacturers to warn about product hazards), GE

has failed to raise a federal defense that is colorable.  While no precise meaning has apparently been

given to the term "colorable", "Defendants must do more than simply plead a federal defense".

Faulk v. Owens-Corning Fiberglass Corp., 48 F.Supp. 2d at 664-665 (emphasis added).  Where, as

here, no admissible evidence is submitted, the federal defense has merely been plead and the defense

is not "colorable".  Id., at 665-666.

In fact, the GE's allegation that it was prohibited from providing asbestos warnings is

rendered all the less colorable and all the more frivolous, given that there is no evidence that the GE

even attempted to issue the relevant asbestos warnings in either the Navy or commercial setting.  See

supra, FACTS §B.

This very point was pointedly made by the Court in Hilbert:

> Nor do the defendants rebut the obvious inference: that they never tried to warn about
> asbestos at all. Their argument thus boils down to a bald, unsupported assertion that
> if they had attempted to warn about the hazards of asbestos, the government would
> have exercised its discretion to bar the warning. At least on this record, that sort of
> speculation is not remotely adequate. It does not come close to demonstrating-even
> colorably-that the government exercised its discretion to issue "reasonably precise
> specification" as to health and safety warnings. The defendants have therefore failed
> to assert a colorable federal defense.

Hilbert, 529 F.Supp.2d at 202-203 (emphasis added).

GE offers the same sort of "bald, unsupported assertion" here, notwithstanding their attempt

to create a smoke screen with the affidavits of Mr. Hobson and Mr. Lehman.  As set forth above, the

Court in Nesbiet did not consider Mr. Hobson's statements suggesting that the Navy prohibited

warnings because such statements were based solely on Mr. Hobson's personal experience which

did not take place during the relevant time period. <u>Nesbiet</u>, 399 F.Supp.2d at 205. The same applies here where Mr. Hobson's experience post-dates Mr. Crowder's Naval service. <u>Id.</u>; <u>see</u>, <u>supra</u>. Mr. Lehman's affidavit suffers from the same time-period deficiency, given that his experience occurred in the 1940s, long before Mr. Crowder entered the Navy. <u>Westmiller</u>, 2005 WL 2850334 at *2 ("Mr. Westmiller worked in the shipyard during the 1950s, and Admiral Lehman's affidavit does not relate to that time period with sufficient specificity to establish a colorable defense.").[10]

Moreover, GE's "bald, unsupported assertion" is rebutted by substantial admissible proof presented here by Plaintiffs. Mr. Moore's Declaration establishes that the applicable Navy specifications did <u>not</u> prohibit or interfere with the decision by GE (or any other company) to warn about the hazards of asbestos. <u>See</u>, <u>supra</u>, FACTS §A. In fact, Mr. Moore's Declaration establishes that the applicable Navy specifications <u>required</u> GE to warn about safety hazards associated with the use of their equipment, with no exemption made for any specific hazard including asbestos. <u>Id.</u>. Further, Dr. Castleman's Declaration establishes that, despite GE's knowledge of the hazards of asbestos by at least 1930, the company made the same decision in both the Navy <u>and</u> commercial setting – i.e., to not issue asbestos warnings for its equipment that contained and utilized asbestos. <u>Id.</u>, §B. Dr. Castleman's Declaration further establishes that, based on his voluminous review of the literature and asbestos industry documents, he has never seen any evidence (i.e. documents or testimony) reflecting that the Navy prohibited or interfered with the decision by GE (or any other company) regarding whether to warn about asbestos. <u>Id.</u>

---

[10] Even without the time-deficiency, Mr. Lehman and Mr. Hobson's conclusory and unsupported statements suggesting that the Navy prohibited asbestos warnings would still be inadmissible. <u>See</u>, <u>supra</u>, n. 8.

18

Based on the foregoing, GE has not asserted a "colorable" federal defense as required pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). Accord, Hilbert, 529 F.Supp.2d at 202-203; Weese, 2007 WL 2908014 at *6 (no colorable federal defense; defendant "failed to point to any government action either mandating a warning or prohibiting a warning that deprived [defendant] of the power to determine an appropriate warning"); Westmiller, 2005 WL 2850334 at *2 ("While it is true that Mesa[11] requires only a 'colorable' federal defense. [Defendant] has not produced any evidence that would meet even that minimum standard."); Faulk v. Owens-Corning Fiberglass Corp., 48 F.Supp. 2d at 664-665; Overly v. Raybestos-Manhattan, 1996 U.S. Dist. LEXIS 13535, *11-12 (N.D. Cal. 1996). Compare with, In re Agent Orange Product Liability Litigation, 304 F.Supp.2d 404, 436, 441-42 (E.D.N.Y. 2004)[12] (government contractor defense applicable where manufacturers were expressly prohibited from providing any warnings with Agent Orange).

## III.    The Interests of Justice Support Prompt Remand To State Court.

Mr. Crowder is in the advanced stage of an incurable cancer. His case is currently assigned to an expedited trial setting in the NYCAL which will result in the completion of all discovery and pre-trial disclosure in the next four months, by October 31, 2008. (Exhibit H). Both Plaintiffs and

---

[11] The full cite is: Mesa v. California, 489 U.S. 121, 109 S.Ct. 959 (1989)].

[12] The Second Circuit's decision to permit federal officer removal in the Agent Orange Litigation is not relevant to the facts here because, inter alia, the case involved design defect claims only, with the evidence being that the government required the manufacturers to provide Agent Orange with the injury-producing ingredients. Isaacson v. Dow Chemical Co., 517 F.3d 129 (2nd Cir. 2008). The record establishes that, at the time of the decision, Plaintiffs' failure to warn claims had been deemed abandoned. In re Agent Orange Product Liability Litigation, 517 F.3d 76, 87 n.9 (2nd Cir. 2008). Quite clearly, a defendant must submit vastly different proofs in a failure to warn case in order to satisfy the requirements of the federal officer removal statute. See supra.

Defendants have a myriad of discovery and pre-trial obligations beginning in July. In addition, if this case is not remanded, it will be transferred to MDL-875, and will encounter significant delay. In re Maine Asbestos Cases, 44 F.Supp.2d 368, 374 n.2 (D.Me. 1999) ("If these claims return to state court, they will proceed to resolution. If they remain in federal court, they will encounter significant delay upon their transfer through the Panel on Multidistrict Litigation to the Eastern District of Pennsylvania").

The delays inherent in MDL-875 are well documented:

> In 2002, the Rand Institute for Civil Justice issued a study on the current status of asbestos litigation in the United States. The Rand study stated that, as of 2002, approximately 73,000 of the 95,994 asbestos suits transferred to the Eastern District of Pennsylvania had been closed. But the study showed that of those 95,994 cases, the MDL panel remanded only 265 to their filing district for trial.

Sales v. Weyerhaeuser Co., 138 Wash.App.222, 233 (2007). Thus, according to the Rand study, less than 1% of all asbestos cases transferred to MDL-875 will be remanded to the transferor district court for a trial date.[13]

It is, therefore, not surprising that GE removed this case from the expedited NYCAL trial docket in the hopes that the case will ultimately be transferred to MDL-875. In re Maine Asbestos Cases, 44 F.Supp.2d 368, 374 n.2 (D.Me. 1999) ("This delay [in MDL-875] is of economic benefit to the defendants and imposes costs on the plaintiffs. In all likelihood, this economic reality is driving the behavior of the parties in this matter.").

---

[13] Speaking on personal knowledge, the undersigned is counsel in another mesothelioma case (Salvatore Gitto) that was removed to this district in June 2007. Gitto v. A.W. Chesterton Co., Inc., et al., 07 Civ. 04771. At the time of Mr. Gitto's removal, his case was scheduled for a November 2007 trial setting. The district court judge to whom the action was removed did not rule on the motion to remand, and the action was subsequently transferred to MDL-875 where Plaintiffs' motion to remand has still not been adjudicated. Id. Mr. Gitto died during the pendency of the motion to remand.

In light of the complete lack of admissible evidence to support GE's removal of this case, Plaintiffs respectfully request that this case be remanded promptly so that Plaintiffs may continue this case in state court without delay.

## **CONCLUSION**

For the reasons set forth above, and based on the evidence set forth in the Declaration of Arnold P. Moore, the Declaration of Barry I. Castleman, and the Declaration of Jerome H. Block, which are adopted and incorporated herein, Plaintiff respectfully requests that the Court remand this case to State Court (Supreme Court, New York County) and grant Plaintiffs all other relief deemed just and proper.

Dated: June 4, 2008

Respectfully submitted,

LEVY PHILLIPS & KONIGSBERG, LLP
*Attorneys for* Plaintiff


By: _____/s/_____
Jerome H. Block [5411]
800 Third Avenue, 13th Floor
New York, New York  10022

21